## City of Chicago v. Anna Farrell, Adm'x, etc.

1. RECOVERY—*On Vouchers to be Paid Only Out of Special Assessments.*—When a contractor agrees to look only to the collections made upon special assessments when they are "actually paid into the city treasury," his recovery will be limited to the amount so paid in at the commencement of the suit.

Assumpsit, on a city voucher. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed. Opinion filed February 21, 1902.

Statement.—Appellee, as administratrix of the estate of Patrick Farrell, deceased, brought suit in assumpsit for her own use against the City of Chicago, for the balance unpaid upon a voucher issued under a special assessment contract for paving a portion of West Madison street in the City of Chicago.

On October 18, 1893, a contract was entered into between Patrick Farrell and the City of Chicago in the ordinary form of special assessment contracts, for the doing of the work. The provisions of this contract of importance in the decision of this case are:

"The City of Chicago agrees to pay said Farrell, *when special assessment or assessments levied* or to be levied for the same *shall be collected,* seventy-eight (78) cents per lineal foot for curbstone, twenty (20) cents per cubic yard for filling, twenty (20) cents per cubic yard for cutting, and one ($1) dollar per square yard for grading and paving with cedar blocks said street between said points."

The contract provides that :

"No act of the city, done or suffered to be done, shall be construed as a collection of any special assessment or part thereof until the money due thereon shall be actually paid into the city treasury; that said sums of money due the contractor shall be payable out of the proceeds of the special assessment levied and out of the proceeds of any special assessment which shall hereafter be levied for said improvement, and also from the general fund of said city, as assessed or to be assessed against said city, as its relative,

equitable proportion of the estimated costs of said improvement, the proportion to be paid by said city of the amounts assessed or to be assessed against said city being the proportion which the whole amount assessed or to be assessed bears or shall bear to the actual cost of said improvement; said party of the first part agreeing to make no claim against said city in any event, except from collection of the special assessment made or to be made for the improvement, and to take all risk of the invalidity of any such special assessments; said party of the second part not to be liable in any event by reason of the invalidity of such assessment or the proceedings therein, or for failure to collect the same; said estimates (of moneys due contractor) will accordingly be paid fully only when the assessment or assessments levied and to be levied for said improvement shall be wholly collected, so that the aggregate of all payments to be made on all vouchers and estimates on account of said improvement issued prior to full collection of assessment, together with amount of said assessment to be rebated to property owners, shall not exceed the full amount of cash collections in the treasury of said city to the credit of said special assessment fund."

CHARLES M. WALKER, Corporation Counsel, and ROSWELL B. MASON, Assistant Corporation Counsel, attorneys for appellant.

JAMES J. KELLY and CHESTER FIREBAUGH, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

Patrick Farrell did the work to the entire satisfaction of the city, and the pavement laid by him has been in use for over seven years.

November 12, 1894, the city gave him a voucher for $11,807.11, upon which payments have been made of $3,150, leaving an unpaid balance, December 20, 1895, of $8,657.11.

The city levied an assessment upon private property of $38,481.85, $2,616.43 being assessed against the city for public benefits. Objections by various property owners were sustained so that the city collected only $31,000.67, a deficiency of $7,413.18. The city expended for costs $3,040.38.

The voucher above mentioned contained on the face thereof the following: "Special Assessment Warrant No. 17,994." * * * "Payable only from the proceeds of the above designated warrant when collected."

From the judgment "refused," of $7,413.18 under the assessment proceedings, the city prayed, but did not perfect, an appeal. The city council did, May 14, 1894, stay for a short time the collection of the assessment, but as all of the assessment for which there was judgment has been collected and paid to the contractor, Farrell, this stay is now immaterial.

The city has not levied another assessment or taken any steps toward collecting the deficiency of $7,413.18.

Patrick Farrell many times demanded from the city payment of the balance unpaid for the work done by him under his contract. At times various city officials assured him that a new assessment would be made; he appealed to the mayor, the city council, its finance committee, the corporation counsel and the superintendent of special assessments; there was much talk by all of these, but no action that was productive of payment. Finally, Patrick died, and his widow is endeavoring to obtain that for which he vainly strove.

It does not appear that the city at any time refused to make an additional assessment; it simply failed to do so. So far as it appears, it probably could have been compelled by mandamus to have made a supplemental assessment, but no attempt to compel it to do so was instituted. Nor did Farrell or any one tender to the city indemnity against the costs of a new proceeding. The costs of the assessment had, were more than $3,000; what those of a supplemental proceeding would be was uncertain; while that anything could be realized therefrom was a matter of doubt.

This action is predicated upon the negligence of the city as to a subsequent assessment. While, as we have said, so far as appears, it is probable the city could have been compelled to make another assessment, it does not appear that Farrell, the contractor, would have profited thereby; that is, there is neither allegation nor proof that anything would

City of Chicago v. Farrell.

have been realized therefrom. Theoretically, at least, so far as the letter and spirit of the law is concerned, special assessments are levied upon private property for, and not to exceed, the amount of private benefit derived by such property from the proposed improvement. That under a new assessment the court would render judgment against private property, this court can not assume. Doubtless it is the case that ofttimes the city is able, with its great power and machinery, to, in special assessment cases, obtain judgments, on account of supposed benefits, against property which in reality is not benefited at all, and in some instances is actually damaged, by the proposed improvement. It might, perhaps, have done so by a subsequent assessment for the benefit of Mr. Farrell, but we can not assume that it could; nor that it would have been able to find property actually benefited. Such subsequent assessment, when taken into court, would have had to be supported by evidence; what that would have been we know not, nor can we tell what view court or jury would have taken of it. The contract entered into by the contractor, Farrell, and the city, is such that it is evident that no business man would have, thereunder, undertaken the work for as low a price as if he had the absolute promise of the city to pay him in cash.

It in effect compelled the assessed property owners who did pay, to pay a larger sum than they would if the contract were one calling for entire payment in money from the city at a definite period, or so soon as the work was done. Nor does the record show that the property against which the court refused judgment, and as to which the city, it is urged, should have procured another assessment, was on the street upon which the pavement was laid. As to property outside of such street, whether it is or will be benefited by the proposed improvement is a matter of pure speculation; while concerning property abutting upon the improvement the amount of benefit is a thing about which the opinions of men and witnesses often differ largely, the same is true as to the benefit to the public, which the city should pay.

In the most unmistakable manner Mr. Farrell agreed to look only to the collections made upon the special assessments, when they should " be actually paid into the city treasury;" these he has had. From the city, at the bringing of this suit, these moneys were all he was entitled to. The court should have instructed the jury to find for the defendant.

The judgment of the Circuit Court is reversed, only for errors of law, without remandment.   Reversed.